STUART, Justice.
Howard McCray, Jr., and his wife Donna McCray appeal from a summary judgment in favor of State Farm Fire and Casualty Insurance Company. We reverse and remand.

Facts

In 1990, Karen Smith Acker, a State Farm insurance agent, sold Howard McCray and Donna McCray homeowners insurance on their residence. The declarations page of the policy listed the named insured as “McCray, Howard C. Jr & Donna, 7195 10th Avenue, Altoona, Alabama 35952-8313.” During their depositions in this case, both McCrays verified that the 10th Avenue address was their correct ad *365 dress and that they received mail at that address. The declarations page also listed the mortgagee as “Regions Bank, P.O. Box 790, Montgomery, Alabama 36102-0790.”
The State Farm policy provided insurance coverage conditioned on the payment of premiums and on the insured’s ’compliance with certain provisions of the policy. The policy expressly stated that State Farm could cancel the policy for various reasons, including the insured’s failure to pay premiums when due. The policy required State Farm to notify the insured, in writing, as to when any cancellation would take effect, at least 10 days before the cancellation date. The cancellation notice was to be mailed to the insured at the mailing address shown on the declarations page of the policy. The provision regarding the notice of cancellation and where the notice was to be mailed applied regardless of whether the premium was payable directly to State Farm or its agent or by the mortgagee pursuant to a finance or credit plan.
Acker, the McCrays’ agent, testified by deposition that when the McCrays first purchased the insurance policy, State Farm billed the McCrays directly for the premium payments. Acker further stated that the McCrays had difficulty making timely payments on several occasions. On June 5, 1991/the McCrays signed a “Request for Pre-Authorized Payment Plan,” which allowed State Farm to- draft the premium payments for the homeowners insurance directly from the McCrays’ checking account at Regions Bank. The “Request for Pre-Authorized Payment Plan” states: “[I]f any deduction is not honored by your bank, all policies are in the same status as if no premium had been paid. The Company [State Farm] will proceed as if the Pre-Authorized Payment Plan were not in effect.. -. Mrs. McCray testified that she understood the purpose of the preauthorized payment plan and how such a plan worked.
According to the McCrays’ deposition testimony, Mrs. McCray handled nearly all of the family’s banking and insurance affairs, except for Mr. McCray’s making a few deposits. The McCrays also testified that during the summer of 2001 they did not reconcile the bank statements they received from Regions Bank with their own records. Furthermore, while Mrs. McCray did not dispute having received those bank statements at the post office box the McCrays maintained, she stated that she often did not open them. In fact, Mrs. McCray testified that the first time she saw her Regions- Bank checking-account statements from May, June, July, and August 2001 was at her deposition, taken on August 15, 2002.
During the time the McCrays did not open their bank statements, they also failed to make timely premium payments to State Farm. In May 2001, the McCrays’ checking account was insufficient to cover the monthly draft, which State Farm attempted to make on May 24. On May 31, 2001, State Farm sent the McCrays a cancellation notice, because of the nonpayment of the premium, at their 10th Avenue address, informing them that State Farm had not received" their premium payment and that it intended to cancel the policy if State Farm did not receive payment by June 13, 2001. Additionally, on May 31, 2001, State Farm sent the McCrays a notice to the 10th Avenue address indicating that the McCrays’ automatic draft for the premium payment had not been honored and that Regions Bank 'has sent State Farm a document indicating the reason for not honoring the draft as “Account Closed.” The notice further provided that if the McCrays wanted to continue paying the premiums on the preauthorized payment plan, they would need to complete *366 and sign the bank-authorization form enclosed with the notice and submit a voided check from the bank with the form when they returned it to State Farm.
In addition to the May 31, 2001, cancellation-of-insurance notice and notice that Regions Bank had not paid the premium by draft because the account had ben closed, Acker sent Mr. McCray a letter, dated June 7, 2001, notifying him that the May premium had not been received. Acker’s letter further instructed him to make a payment of $47.07 before June 13, 2001, to avoid a lapse in coverage. During their depositions, the McCrays acknowledged that the May 31 notices and Acker’s letter were correctly addressed to the McCrays’ residence, as listed in the State Farm policy. Although the McCrays stated that they did receive mail at the 10th Avenue address, Mrs. McCray testified that she had not seen the May 31 cancellation notice or the letter from Acker until her August 15, 2002, deposition. Mrs. McCray also acknowledged that Regions Bank closed the McCrays’ checking account in June 2001 because of overdrafts. The McCrays produced no evidence indicating that after their checking account from which the policy premium was paid was closed, they completed another bank-authorization form or submitted a voided check to State Farm to continue the preau-thorized-payment plan to pay the premiums on the homeowners insurance. The record is silent as to whether the McCrays received notice that the draft had not been paid.
Mrs. McCray also testified that on June 19, 2001, she made a deposit of $150 into her Regions Bank checking account. Mrs. McCray stated that when she made the deposit, a representative of Regions Bank told her that her account would be reopened and that it would have the same account number. Mrs. McCray testified that although her Regions Bank account had been closed, she assumed, because she had been informed by Regions Bank that her account would be reopened with the same account number, that State Farm would continue to draft the premiums from her account without her having to submit another preauthorized-payment-plan form and voided check to State Farm. Furthermore, Mrs. McCray admitted in her deposition that the Regions Bank bank statements dated May 25, June 27, July 27, and August 27, 2001, did not indicate any debit for an insurance premium payment to State Farm.
Despite her contention that she did not receive the May 31 cancellation notice or the June 7 letter, Mrs. McCray testified that she went to Acker’s office sometime in June, she thought, to make a premium payment. State Farm’s records show that a premium payment was received from Mrs. McCray on July 7, 2001. Mrs. McCray also testified that she went to Acker’s office when she had received a statement from Regions Bank indicating that the checking account had been closed.
The McCrays again had difficulty making a timely premium payment in August 2001. State Farm claimed to have mailed a cancellation notice for nonpayment of premium to the McCrays’ 10th Avenue address; however, the McCrays testified that they did not recall receiving the notice. The August 30, 2001, cancellation notice indicated that if a premium payment was not received by September 19, 2001, the policy would be canceled as of that date. Valerie Buford, a State Farm payment-plan supervisor, stated in her affidavit that the August 30 cancellation notice was sent to the McCrays at the 10th Avenue address that appears on the declarations page of their homeowners insurance policy. She also stated that the cancellation notice was properly addressed, that *367 sufficient postage was affixed to the notice, and that State Farm’s return address appeared on the envelope. Buford also stated that the August 30 cancellation notice sent to Regions Bank, as .mortgagee, was properly sent to Regions Bank at its address as it appeared on the declarations page of the policy. She further testified that the photographs of the envelopes containing the August 30 cancellation notices sent to the McCrays and Regions Bank attached to her affidavit as exhibits were true and correct copies.
The McCrays failed to make a premium payment by September 19, 2001, and the policy was canceled. On Saturday, November 24, 2001, the McCrays’ house was damaged by a tornado.' On the evening of the tornado, Mrs. McCray telephoned Acker and informed her that a tornado, had damaged their house. On the. following Monday, Acker telephoned the McCrays and told them that the State Farm policy was not in effect because it had been canceled as of September 19, 2001, for nonpayment of premium. Both the McCrays and Regions Bank claimed that they never received the August 30, 2001, cancellation notice. The McCrays both testified that they had not received the August 30 cancellation notice. Furthermore, Janice Baker, the Regions Bank loan officer in charge of the McCrays’ mortgage loan, testified by affidavit that she had inspected the Regions Bank file related to the McCrays’ loan and that she had found nothing in the file indicating that their homeowhers policy had been canceled pri- or to November 24, 2001.
The McCrays have not contended that the cancellation notices and the May notice that the automatic draft had not been made should have been sent to their post office box instead of their residential address. As previously stated, the McCrays both testified that they had lived at the 10th Avenue address since 1990 and that they did receive mail at that address. The explanation offered by the McCrays as to why they did not receive the May 31 cancellation notice, the notice that the bank draft had not been made, and the August 30'Cancellation notice is that the mailbox at their house had been vandalized ■ in the past. They testified that items other than mail had been placed in their mailbox, bhat mail had been “thrown up” in their yard, that the mailbox door had on occasions been opened and left open, and that their mailbox had been “beaten on.” Mr. McCray testified that, he had notified a local police officer about those problems with their mailbox but that he never filed a formal police report or informed his mail carrier of the problems.
After State Farm denied coverage because the policy had been, canceled, the McCrays sued State Farm alleging breach of contract,[1] seeking the full amount payable under their policy for the loss caused by the tornado. On March 24, 2003, State Farm filed a motion for a summary judgment and a memorandum brief in support of the motion. State Farm argued that the McCrays’ breach-of-contract action must fail because their homeowners policy had been canceled for nonpayment of premium before their house was damaged by the tornado, and the cancellation had been accomplished in accordance with the terms of the McCrays’ policy and with Alabama law. On April 11, 2003, the McCrays filed a response to State Farm’s summary-judgment motion, including a brief, in support of their response.
*368 On October 10, 2003, the circuit court entered a summary judgment in favor of State Farm. On October 17, 2003, the McCrays filed a motion to alter, amend, or vacate the summary judgment, which the court denied on November 11, 2003. This appeal followed.

Standard of Review

In our review of a summary judgment, we apply the same standard used by the trial court in determining whether there was a genuine issue of material fact and, if not, whether the movant is entitled to a judgment as a matter of law. Ex parte Lumpkin, 702 So.2d 462, 465 (Ala.1997). Our review is subject to the caveat that we must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).

Analysis

“The principle is universally recognized that the right in the insurer to cancel an insurance policy is strictly construed and the condition imposed upon it with respect to giving notice of cancellation must be strictly performed.... ” Trans-America Ins. Co. v. Wilson, 262 Ala. 532, 534, 80 So.2d 253, 255 (1955). Furthermore, this Court has stated that “an insurer asserting cancellation of a policy has the burden of proof.” Id. Moreover, the presumption of the law is as follows:
“ ‘A letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render the evidence of mailing inadmissible. Neither is conclusive. Whether it was so mailed and received becomes a jury question.’ ”
Sisson v. State Farm Fire & Casualty Co., 824 So.2d 708, 710 (Ala.2001)(quoting Corinth Bank & Trust Co. v. Cochran, 219 Ala. 81, 83, 121 So. 66, 67 (1929)). In the instant case, State Farm correctly presumed that because the envelopes containing the cancellation notices were properly addressed, stamped, and mailed and were not returned to State Farm, they were received by the McCrays and by Regions Bank, as the mortgagee. The analysis, however, does not stop here. Because the McCrays and Regions Bank both denied having received the notices, the issue of proper mailing becomes one for the jury to decide.
The Sisson Court continued:
“We rejected the insurer’s attempt to rely upon policy language establishing proof of mailing as proof of notice of cancellation in Ex parte Alfa Mutual General Insurance Co., 742 So.2d 182 (Ala.1999), where the insurer’s proof of mailing was supported only by the testimony of an employee of the insurer....”
824 So.2d at 710-11. The case before us is similar to Ex parte Alfa Mutual General Insurance Co., 742 So.2d 182 (Ala.1999), because here the only evidence State Farm offered to prove that the cancellation notices were properly mailed to the McCrays and Regions Bank is the affidavit of Valerie Buford, the payment-plan supervisor, and the photographs of the envelopes addressed to the McCrays and Regions Bank and allegedly containing the notices. With nothing more to offer, State Farm has not met its burden of proof. In fact, in many of the cases dealing with the issue of proper mailing, the insurer provided either testimony of a United States postal worker, certificates of mailing, or testimony of the insurer’s mail clerks as proof that the letter or notice was properly mailed. See Harrell v. Alabama Farm Bureau Mut. Cas. Ins. Co., 287 Ala. 259, 262-63, 251 *369 So.2d 220, 223 (1971); Sisson, supra; Ex parte Alfa, supra.
Similarly, an important comparison can be made between the instant case and the Court of Civil Appeals’ decision in the Alfa case, which this Court affirmed with regard to the claims against Alfa. The Court of Civil Appeals reversed a summary judgment in favor of Alfa, stating:
“Spriggs [the insured] denied receiving the cancellation letter. Her assertion, standing alone, would not be sufficient to defeat Alfa’s motion for a summary judgment. Hilliar [v. State Farm Mut. Auto. Ins. Co., 451 So.2d 287 (Ala.1984) ]. However, Compass Bank says that it too did not receive the notice of cancellation. This additional evidence presents a question of fact as to whether the notice of cancellation was properly mailed.”
Spriggs v. Compass Bank, 742 So.2d 178, 180 (Ala.Civ.App.1997). Likewise, in the case before us, Regions Bank denied having received the cancellation notice, which State Farm claims to have mailed to the post office box of Regions Bank in Montgomery. Therefore, Regions Bank’s denial that it received the cancellation notice is the “additional evidence” that presents a question of fact for a jury to decide — • whether the notice was properly mailed.
Finally, State Farm asserts that the McCrays’ unsupported allegations that they did not receive the cancellation notice are insufficient to defeat State Farm’s properly supported motion for a summary judgment. However, with the additional evidence indicating that Regions Bank did not receive the cancellation notice, it is clear that the McCrays’ allegations were not unsupported. The additional evidence offered by the McCrays, in conjunction with their allegations, creates a fact question for the jury on whether State Farm properly mailed the cancellation notice. Therefore, summary judgment was improper.

Conclusion

For the above reasons, the circuit court erred in granting State Farm’s motion for a summary judgment. The judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, BROWN, and HARWOOD, JJ., concur.

. Although the McCrays did not word their complaint as alleging a breach-of-contract action, the circuit court construed it as one.