Dr. J. Gregory Sullivan, the plaintiff in a breach-of-contract action against Eastern Health System, Inc. ("EHS"), appeals from a summary judgment entered in favor of EHS, arguing that the trial court erred in holding that he had failed to establish, by substantial evidence, the existence *Page 357 
of a genuine issue of material fact. We affirm.
 I.
From September 1987 until July 2001, Dr. Sullivan enjoyed medical-staff privileges at Medical Center East ("the hospital"), a full-service hospital in Birmingham operated by EHS. In June 2001, Dr. Sullivan's application for reappointment for medical-staff privileges was before the hospital's medical staff executive committee ("the committee") for consideration. The committee recommended to the hospital's governing board that Dr. Sullivan's privileges not be renewed based on a number of instances in which the committee had found that Dr. Sullivan had not acted in accordance with hospital regulations and procedures. On June 19, 2001, a letter to Dr. Sullivan was prepared informing him of the committee's recommendation not to renew his privileges. The letter advised Dr. Sullivan that, under Article X of the medical-staff bylaws of the hospital ("the bylaws"), he was entitled to ask for a hearing to review the committee's decision and stated that if he did not request a hearing within 30 days of the receipt of the letter, the right to such a hearing would be deemed to have been waived.[2] The letter was signed by George McGowan, the hospital's chief executive officer. According to the affidavit of hospital employee Trudy Stricklin, the letter was mailed the next day via certified mail, return-receipt requested, to Dr. Sullivan at his business address.[3] The postal receipt returned to the hospital indicated that the letter was delivered to Dr. Sullivan's office on June 22, 2001, and that Luisa Cook, an employee of Dr. Sullivan's, signed for the letter.
It is undisputed that, within the 30-day period beginning June 22, 2001, Dr. Sullivan did not request a hearing to contest the committee's recommendation not to renew his medical-staff privileges. Accordingly, on July 24, 2001, McGowan sent Dr. Sullivan another letter stating that, because Dr. Sullivan had not requested a hearing to review the committee's recommendation within the 30-day period after he was provided with written notice of the committee's recommendation, his right to request such a hearing had been deemed waived, and the committee's recommendation that his medical-staff privileges not be renewed was final.
On July 27, 2001, Dr. Sullivan hand delivered a letter to McGowan's office, stating that he had just learned that morning, from another physician at the hospital, that he had an outstanding issue with the committee and that the committee was awaiting a response from him in regard to a letter sent to him detailing the matter. He further stated that he had not received the letter, but he acknowledged that his office had been undergoing extensive renovations over the previous three months and that "it [was] possible that an unopened *Page 358 
letter was a casualty of the construction." Dr. Sullivan requested a copy of the letter and indicated that he intended to respond to it once he received it.[4]
After Dr. Sullivan received a copy of the June 19 letter, he requested a hearing. EHS declined to grant him one. An August 1, 2001, letter signed by McGowan and sent to Dr. Sullivan by certified mail stated, in whole:
 "Please allow this letter to serve as notice to you that the Governing Board of Medical Center East met on August 1, 2001 regarding your application to be recredentialed to the Medical Staff of Medical Center East. The Governing Board has voted to accept the recommendation of the Executive Committee of the Medical Staff that your reapplication for privileges be denied. Due to the fact that you have waived your right to a hearing, in accordance with the Medical Staff By-Laws, this decision is final."
On May 23, 2002, after subsequent requests for a hearing were also denied, Dr. Sullivan sued EHS in the Jefferson Circuit Court alleging breach of contract. Specifically, Dr. Sullivan alleged that the medical-staff bylaws constituted a contract between him and EHS and that EHS had breached that contract by failing to provide him with a hearing at which to contest the committee's recommendation that the governing board not renew his medical-staff privileges. EHS argued that it had complied with the bylaws and that Dr. Sullivan had waived his right to a hearing by failing to request a hearing within 30 days following the delivery to his office of the June 19 letter informing him of the committee's recommendation. On August 25, 2004, EHS moved for a summary judgment on that basis. On September 23, 2004, the trial court granted the motion and entered a summary judgment in favor of EHS.[5] Dr. Sullivan appeals.
 II. "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve *Page 359 
all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341,344 (Ala. 1997). Accordingly, this Court's review of a summary judgment is de novo. Thus we review the evidence to determine if there is a genuine issue of material fact as to when Dr. Sullivan received notice of the committee's recommendation that the hospital not renew his medical-staff privileges and, thus, whether EHS breached its contract with Dr. Sullivan by failing to provide him with a hearing to appeal the committee's recommendation not to renew his medical-staff privileges.
 III.
In order to establish the elements of a breach-of-contract claim, Dr. Sullivan must show: (1) that a valid contract existed between him and EHS; (2) that he performed under the contract; (3) that EHS failed to perform under the contract; and (4) that lie was damaged as a result. Reynolds Metals Co. v.Hill, 825 So.2d 100, 105 (Ala. 2002) (citing State FarmFire Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. 1999)). EHS has not disputed Dr. Sullivan's claims that the medical-staff bylaws constituted a contract between him and EHS or that he may have suffered damage as a result of the nonrenewal of his medical-staff privileges. Nor has EHS alleged that Dr. Sullivan somehow first breached the contract, thus excusing any future non-performance of its own. Therefore, the only issue in this case is whether there is any issue of material fact as to when Dr. Sullivan received notice of the committee's recommendation and, thus, whether EHS's refusal to grant Dr. Sullivan a hearing constituted a failure to perform by EHS according to the terms of the contract contained in the medical-staff bylaws.
Article X, section A, paragraph 1, of the bylaws states, in pertinent part:
 "When a practitioner receives notice of any action which has been taken against him . . . with respect to reappointment, and the action against him will adversely affect his appointment or status as a member of the Medical Staff or his exercise of clinical privileges, he shall be entitled to a hearing. . . ."
Thus, pursuant to bylaws, Dr. Sullivan was entitled to a hearing to contest the committee's recommendation not to renew his privileges. EHS acknowledges this fact; however, it argues that Dr. Sullivan subsequently waived his right to a hearing by failing to request such a hearing within the period prescribed by Article X, section B, which states:
 "1. Prompt written notice by certified mail to his last known address, or hand delivered mail to the practitioner's office, return receipt requested, shall be given by the Chief Operating Officer to the practitioner concerned of any adverse recommendation or decision.
 "2. Notice of adverse recommendation or decision shall at least: (a) advise him of his right to a hearing or an appellate review pursuant to Article X of these Bylaws; (b) specify that he shall have thirty (30) days following the date of receipt of such notice within which to request a hearing or an appellate review; (c) state that failure to request a hearing or an appellate review within the specified time period shall constitute a waiver of his rights to same.
 "3. Failure of a practitioner to request any hearing or any appellate review provided to him by the Bylaws within thirty (30) days of the delivery of notice to his office or the mailing of notice to his last known address, of any action taken *Page 360 
which is adverse to practitioner, shall constitute waiver of his right to a hearing or appellate review."
According to these provisions, EHS is not obligated to ensure that a practitioner himself has in fact received the notice. Rather, the bylaws provide that a practitioner is entitled to notice sent "by certified mail to [the practitioner's] last known address, or hand delivered mail to the practitioner's office, return receipt requested." Dr. Sullivan argues that there is a genuine of material fact as to when he received notice of the committee's recommendation not to renew his medical-staff privileges and that summary judgment was improper.
In support of his argument that the issue of when he received the letter notifying him of the committee's recommendation that the hospital not renew his privileges presents a jury question, Dr. Sullivan first cites numerous cases applying the common-law principle generally referred to as the "mailbox rule" or the "letter presumption." As articulated by this Court inCorinth Bank Trust Co. v. Cochran, 219 Ala. 81,83, 121 So. 66, 67 (1929), this principle stands for the proposition that
 "[a] letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render the evidence of the mailing inadmissible. Neither is it conclusive. Whether it was so mailed and received becomes a jury question."
In recent years, this Court has affirmed the ongoing validity of Cochran and this principle in Ex parte AlfaMutual General Insurance Co., 742 So.2d 182 (Ala. 1999),Sisson v. State Farm Fire Casualty Co.,824 So.2d 708 (Ala. 2001), and McCray v. State Farm Fire CasualtyIns. Co., 892 So.2d 363 (Ala. 2004). Dr. Sullivan argues that, based on Cochran and its progeny, he is entitled to a jury trial based solely on the fact that he has presented evidence indicating that he did not receive the June 19 letter that was mailed by Stricklin to his office. However, Dr. Sullivan's reliance on the letter presumption is misguided because, in this case, no presumption of receipt need be made.
As it has been historically applied, the letter presumption creates a presumption of receipt of a letter based on proof of the mailing of a letter. In the instant case, EHS has not asked this Court to presume that the June 19 letter was delivered to Dr. Sullivan based solely on its representation that the letter was properly addressed, stamped, and mailed, or even on the basis of a postal certificate showing that the letter was mailed. EHS instead relies on the return receipt created by the United States Postal Service establishing that Dr. Sullivan's employee Luisa Cook personally signed for the letter on June 22. It is unnecessary for this Court to rely on the letter presumption to presume that the June 19 letter was delivered when there is tangible proof of delivery in the form of the signed return receipt.[6] *Page 361 
Although the letter presumption is not relevant to this case, this Court still must consider the second argument raised by Dr. Sullivan — whether EHS made a prima facie showing that it provided Dr. Sullivan the notice of the committee's recommendation required by the bylaws, and, if so, whether Dr. Sullivan then presented substantial evidence creating a genuine issue of material fact as to whether such notice was provided. The bylaws require that written notice of any adverse recommendation by the committee be made "by certified mail to [the practitioner's] last known address . . . return receipt requested." In support of its position, EHS relies on the sworn statement of hospital employee Trudy Stricklin stating that "[t]he letter dated June 19, 2001, was sent by certified mail to Dr. Sullivan at his business address." EHS also has submitted the certified-mail receipts indicating mailing on June 20 and the return receipt signed by Luisa Cook on June 22. Stricklin stated in her affidavit that "these [receipts submitted as evidence] are the receipts for the June 19, 2001 letter mailed to Dr. Sullivan." Altogether, this evidence constitutes a prima fade showing not only that the June 19 letter providing notice of the committee's recommendation was properly sent to Dr. Sullivan's last known address via certified mail, return receipt requested, which is all the bylaws require, but also that the letter was in fact received by Dr. Sullivan's office.
The burden therefore shifted to Dr. Sullivan to present substantial evidence indicating that he did not receive the June 19 letter, even if an envelope was in fact delivered to his office. In his brief to this Court, Dr. Sullivan summarized the evidence he submitted to the trial court on this point as follows:
 "1. The affidavit of Luisa Cook Shew."[7] Ms. Shew's affidavit states that it was not her `job or responsibility to open Dr. Sullivan's mail.' Ms. Shew further states that her signing the receipt for the certified envelope would not enable her to know what was in the envelope because she would not have opened it. (Thus, Ms. Shew's signing for the envelope does not prove that the envelope contained the letter in question.)
 "2. The affidavit of Barri Harrison. Ms. Harrison, Dr. Sullivan's office assistant, states that her job duties included opening Dr. Sullivan's mail so that she could assist him in responding to it. She stated that she `reviewed the mail to determine whether [she] could respond . . . or if [she] needed to meet with Dr. Sullivan in order to respond.' Ms. Harrison states that she `never opened a certified letter that contained [the letter].' Her affidavit further states that the significance of the letter would have been obvious to her and that, had she received a letter of such importance, she would have immediately brought it to Dr. Sullivan's attention. In addition, she states that if `such a letter [had] been received, [she] would definitely remember it.'
 "3. The deposition testimony of Dr. Sullivan. Dr. Sullivan testified *Page 362 
that, rather than receiving the letter in his office, he first heard of the letter's existence on July 27, 2001, when another doctor told him about it. Dr. Sullivan requested a hearing within 30 days of this date, which would have made his request for a hearing timely under the Hospital Bylaws. In fact, when Dr. Sullivan did become aware of the letter's existence, on July 27, 2001, he responded to the letter, in writing, `within about an hour.' He personally delivered his response to Mr. McGowan's office, but Mr. McGowan was not in. However, Dr. Sullivan did request a hearing when he spoke with Mr. McGowan shortly thereafter."
(Dr. Sullivan's brief, pp. 5-7.) (Citations to the record omitted.) This evidence, when viewed in the light most favorable to Dr. Sullivan, does not support a reasonable inference of the fact he seeks to prove — that the June 19 letter was not delivered to his office. See Hobson, 690 So.2d at 344.
Dr. Sullivan's theory is that the return receipt signed by Cook on June 22 might have represented the delivery of some other certified letter sent to him by EHS in the same time frame. When Dr. Sullivan raised this theory at his February 17, 2003, deposition, defense counsel specifically requested that they be provided with copies of any other certified letters Dr. Sullivan received from EHS during the period around June 22, 2001. No such letters have been submitted as evidence or otherwise identified. Neither is there any evidence other than that set forth above that would support the proposition, also raised by Dr. Sullivan, that EHS might have mailed him an empty envelope. "[F]air-minded persons in the exercise of impartial judgment" could not reasonably infer that the return receipt signed by Cook represented a receipt for an empty envelope or a letter other than the one informing Dr. Sullivan of the committee's recommendation that his medical-staff privileges not be renewed without some concrete evidence to that effect from whoever opened the certified envelope. Dr. Sullivan's hypotheses are speculative.
Under the standard of review for a summary judgment, we must resolve all reasonable doubts against EHS, as the movant, and in favor of Dr. Sullivan, as the nonmovant; however, speculation alone cannot create a reasonable doubt. "Evidence that affords nothing more than a mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to a jury." Smoyer v. Birmingham Area Chamber of Commerce,517 So.2d 585, 588 (Ala. 1987) (citing Sprayberry v. FirstNat'l Bank, 465 So.2d 1111 (Ala. 1984), and Headrick v.United Ins. Co. of America, 279 Ala. 82, 181 So.2d 896
(1966)).
 IV.
The issue before this Court is whether there is substantial evidence indicating that Dr. Sullivan did not receive notice of the committee's decision and that EHS, thus, breached its contract with Dr. Sullivan by failing to provide him with notice, as prescribed by the medical-staff bylaws, which would have afforded him a hearing before his medical-staff privileges were terminated. Dr. Sullivan has failed to establish by substantial evidence that a question of fact exists as to whether EHS fulfilled the notice requirement in the by-laws when it mailed the June 19 letter via certified mail, return-receipt requested. Accordingly, EHS was entitled to a judgment as a matter of law on Dr. Sullivan's breach-of-contract claim, and the trial *Page 363 
court's summary judgment in its favor is affirmed.
AFFIRMED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
[2] The relevant text of the June 19 letter stated:
 "Please be advised that the Medical Staff Executive Committee at its meeting on June 12, 2001 has recommended to the Governing Board that your application for reappointment for clinical privileges be denied.
 ". . . .
 "Please be advised that this recommendation of non-renewal entitles you to a hearing and an appellate review as provided in Article X of the Medical Staff By-laws. Furthermore, you have 30 days following the receipt of this letter within which to request a hearing. If you fail to request a hearing within this 30 day period of time, you will thereafter waive your right to such a hearing."
[3] As director of quality services, Stricklin was the coordinator of all investigations involving medical staff at the hospital. Her duties included keeping meeting minutes and sending out correspondence for the hospital's quality-review committees.
[4] The substance of Dr. Sullivan's July 27 letter indicates that he had not yet received the second letter from McGowan dated July 24.
[5] EHS also argued that it was entitled to a summary judgment based on the immunity provided by the Health Care Quality Improvement Act, see 42 U.S.C. § 11111. However, because the trial court ruled that EHS was entitled to a summary judgment on another ground, it did not find it necessary to consider that argument. For that same reason, this Court likewise does not find it necessary to consider EHS's immunity argument.
[6] Although the letter presumption is not applicable to this case because we need not presume that a letter was delivered when a signed return receipt establishes that it indeed was, recent caselaw applying the principle does bolster the conclusion we reach in this case. In Sisson, this Court considered the following certified question from the United States District Court for the Northern District of Alabama pursuant to Rule 18, Ala. R.App.P.:
 "`Whether, under the facts of this case, the insured's denial of receipt of a notice of policy cancellation or nonrenewal creates an issue of fact as to mailing where the insurer's proof of mailing includes the Postal Service's Certificate of Mailing indicating its receipt of the notice to plaintiff for mailing on January 15, 1998.'"
824 So.2d at 709. This Court answered the question in the negative, holding that a certified receipt issued by the United States Postal Service indicating that a letter was mailed was sufficient to establish that the letter was in fact mailed.824 So.2d at 711.
[7] It appears that at some point after she signed for the letter, Luisa Cook changed her name to Luisa Cook Shew.