PITTMAN, Judge.
Shirley Taylor, a tenured teacher who had been employed by the Huntsville City Board of Education (“the Board”) for 18 years before the Board dismissed her from employment on March 2, 2012, appeals from a judgment of the Madison Circuit Court granting the Board’s petition for a common-law writ of certiorari to the administrative law judge (“ALJ”) who reviewed the Board’s decision and quashing the ALJ’s order requiring the Board to provide Taylor with a pretermination hearing, pursuant to § 16-24C-6(b), Ala.Code 1975, a part of the Students First Act of 2011, § 16-24C-1 et seq., Ala.Code 1975 (“the Act”). We reverse the judgment.

Factual and Procedural Background

Taylor is a 56-year-old third-grade teacher who had been employed by the Board since 1994. Before becoming a teacher, Taylor had been in active-duty military service with the United States Army for 12 years, including a deployment *222 to the Persian Gulf for Operation Desert Storm. She remained in the Army Reserve while she was a teacher and retired from the Army in 2008 with the rank of lieutenant colonel.
On February 10, 2012, the Board mailed two letters to Taylor; one letter was sent by certified mail, return receipt requested, and the other by regular, first-class mail. The letters informed Taylor that the Board proposed to terminate her employment, stated the grounds for termination, and advised her that she had 15 days to request a hearing and contest the proposed termination, failing which, the letter stated, the Board would vote on her dismissal at a meeting on March 1, 2012.[1] The Board, not having received by March 1, 2012, a request from Taylor for a hearing, voted that day to terminate her employment. On March 2, 2012, the Board hand-delivered a letter to Taylor at the school where she was employed, informing her of the Board’s decision to terminate her employment, and had her escorted from the campus.
Taylor denied that she had received a notice-of-proposed-termination letter and requested that the Board rescind its vote to terminate her employment and grant her a hearing. The Board denied that request. On March 15, 2C12, Taylor appealed directly to the Chief Administrative Law Judge of the Office of Administrative Hearings, Division of Administrative Law Judges, Office of the Attorney General, pursuant to § 16-24C-12, Ala.Code 1975,[2] alleging that the Board had failed to provide her with notice and a hearing before it terminated her employment.
The Board responded, asserting that it had complied with the notice provision of *223 the Act, specifically with § 16-24C-6(k), Ala.Code 1975, which provides:
“Unless otherwise provided, notice for all purposes under this chapter shall be given by United States mail, certified delivery, by private mail carrier for next business day delivery, or by physical delivery to the employee or the last known address of the employee. Notice by certified mail or private mail carrier shall be deemed received by the employee and complete for purposes of this chapter two business days after the notice is deposited for certified delivery in the United States mail or placed with a private mail carrier for next business day delivery. The employer has the burden of producing evidence that service was [effected in the manner permitted by this chapter, but the employee has the burden of proving that such service was not properly made.”
(Emphasis added.) The Board maintained that it had satisfied the requirements of § 16-24C-6(k) by depositing the notice of proposed termination in the mail for certified delivery, and, it contended, it had also taken extra steps to ensure that Taylor was notified of the proposed termination of her employment by sending an additional letter by regular, first-class mail.
The ALJ conducted a hearing on June 18, 2012, at which it received documentary and testimonial evidence. Taylor presented her own testimony as well as the testimony of her neighbors, Quirante Hereford and Andrew Coe. The Board presented the testimony of Belinda Williams, the director of human resources for the Huntsville City School System (“HCSS”), and Lisa Teague, Williams’s administrative assistant. On August 6, 2012, the ALJ rendered a comprehensive, 29-page order requiring the Board to provide Taylor with a hearing. In its findings of fact, the ALJ stated:
“Taylor denied receiving both the certified mail letter and the letter sent by first class mail. Taylor testified that given her military background, she is conscientious of deadlines. Had she received the letter, she would have immediately sought help from her local Alabama Education Association. Underscoring her testimony was the fact [that,] immediately following the notice of her dismissal, she sought assistance directly after being escorted from the school.
“Prior to voting upon Taylor’s dismissal, neither the Board, nor anyone at HCSS checked on the tracking of the certified mail letter to determine whether or not delivery had been accomplished, despite the fact that the Board [had] paid an additional fee for a return receipt of the February 10, 2012, letter and had access to tracking of the certified mail letter. Belinda Williams, the Director of Human Resources for HCSS, inquired only whether Taylor [had] filed a notice of contest on or before February 29, 2012, but did not confirm that a return receipt had been issued for the certified mail; she did not attempt to track the certified mail through the United States Postal Service [ CUSPS’) ] website; and she did not confirm that Taylor [had] received the letter through any other source. No attempt was made to hand deliver the letter to Taylor at the school, even though Taylor taught on campus daily and the school provided a mail box for each teacher, which Taylor checked at least three or four times a day. No one verbally confirmed Taylor’s awareness of the pending action.
[[Image here]]
“The [USPS] provides user-friendly methods for tracking certified mail through every routed postal location, de *224 livery attempts, and actual delivery. The USPS assigns every item of certified mail an internal tracking number. The entity mailing the certified mail item may review the tracking information via the internet by simply going to the USPS website and entering the certified mail tracking number. Despite the fact that the Board elected to accomplish service by certified mail, no one attempted to track the delivery information prior to the Board’s vote on March 1, 2012. Lisa Teague testified that, as a matter or course, the school system never utilized the tracking system to see if a certified letter had been received. The HCSS addressed the letter to Taylor’s correct address on Sanibel Circle in Madison, Alabama.
“The Board introduced the USPS tracking information and a copy of the envelope as exhibits in this case. The internal tracking sheet begins on February 10, 2012, and reflects that the item was mailed at 4:04 p.m. from a Huntsville Post Office. The USPS processed the letter on February 11, 2012, at 4:35 a.m. and it arrived at the ‘Unit’ (which is assumed to be the Madison [City] Post Office) on February 11, 2012, at 8:35 a.m. at the 35758 zip code (one digit different [from] Taylor’s [35757] zip code). That same day, someone apparently wrote what appears to be an ‘NC, 2-11-12, KAP’ on the outside of the envelope. The next entry made on the USPS tracking summary reflects that a notice was left on February 11, 2012, at 11:14 a.m. in Madison, Alabama at a location in the 35757 zip code area. No additional evidence demonstrates that the postal carrier left the notice at Taylor’s hone. Taylor has denied receiving any notice.
“Subsequent events cast significant doubt on the accuracy of the USPS information and if delivery was made to Taylor’s home. On the outside of the envelope, two sets of numbers exist, as if to reflect dates. These numbers are 2-17 and 2-28. These dates do not directly match the USPS.com tracking information data. No data entry exists for either February 17 or February 27. On February 28, 2012, the USPS Tracking data states ‘Unclaimed.’ No zip code is recorded on the tracking sheet as it [was] on the previous deliveries. On the outside of the envelope, a postal carrier checked ‘Unclaimed.’ At some point, however, someone other than Taylor attempted to sign the green return-receipt card. At the hearing, the parties could not agree on the name reflected regarding the green card’s handwritten signature. The unclear cursive handwriting could be read to reflect the name ‘Doug’ or ‘Mary or ‘Marg.’ However, no one even suggested that the signature even remotely looked like Taylor’s handwriting. No conclusive evidence demonstrated where this attempted delivery had been made or the individual upon whom the USPS attempted service. However, given the handwriting, which did not appear to belong to Taylor, the greater weight of the evidence demonstrates that the certified mail was, in all probability, not delivered to the correct address or delivery was attempted upon the wrong individual. No evidence was presented that anyone other than Taylor resides in her home.
“The next entry on the USPS tracking sheet, dated March 4, 2012, states ‘moved, left no address.’ Again, no zip code is provided for the area in Madison, which confirms what area of Madison in which delivery may have been attempted. The clear, undisputed evidence demonstrated that Taylor had not moved; rather, she has resided at her current address at 124 Sanibel Circle in *225 Madison, Alabama for the last four years and continues to reside at that address today. On the actual certified mail envelope, the envelope reflects that it was ‘unclaimed,’ but no date is provided when this determination was made or by whom. It is unknown whether the ‘moved, left no forwarding address’ entry was merely a data entry error, or if the postal carrier left the attempted delivery notice at the wrong house where this inaccurate information was provided by the resident. All that can be certain is that Taylor has not moved in recent years and this entry casts doubt on whether delivery was attempted at the correct location.
“Finally, the February certified mail notice was returned on March 7, 2012 to Huntsville, AL at the 35801 zip code. Thereafter, USPS returned the letter back to HCSS, Department of Human Resources on or about March 10, 2012.
“Andrew Coe and Quirante Hereford, both neighbors in Sanibel Circle where Taylor resides, testified that their assigned postal carrier often mistakenly delivered mail to the wrong household. In most cases, neighbors would either walk the incorrectly delivered mail to the neighbor’s house or place it back in the mailbox for the postal carrier to reroute to the correct address. Taylor’s counsel offered two indictments in the Northern District of Alabama of postal carriers who had been charged with theft of mail items, one of which was employed at the Madison, Alabama Post Office. However, the evidence was insufficient to establish that either of these mail carriers actually handled the proposed termination letter which is at issue.
“... [Although the Board did not have actual notice that the certified mail had not been delivered to Taylor prior to voting on the proposed recommendation for termination, the Human Resources Department did have access to notice of the non-delivery via access to internal tracking information from the USPS informing them that the letter had not been delivered. The Human Resources Department could have merely entered the assigned tracking number on the USPS website to reveal the delivery attempts associated with the letter. Moreover, although not required to do so, the Human Resources Department paid for and requested a ‘return receipt.’ That return receipt had not been returned, and no evidence suggests that the Human Resources Department checked to see if the receipt had been returned.
“With regard to the copy of the proposed termination letter that the HCSS mailed by first class mail, the testimony demonstrated that it had been mailed on February 10, 2012, although no copy was provided of the outside of this envelope or the postal information associated with the letter. In addition to not receiving the letter mailed by certified mail, Taylor also denied receiving the letter mailed by first class mail. The testimony demonstrated that this first class mail letter contained the return address of the Department of Human Resources, HCSS; yet the USPS did not return the first class letter to the HCSS Human Resources Department. Thus, although the fact that it was not returned suggests receipt of the letter by someone, no conclusive evidence demonstrates delivery [to] or receipt by Taylor.”
The ALJ ultimately concluded that Taylor was entitled to a hearing on either of two independent grounds, namely: (1) that the Board had failed to comply with the notice provisions of the Act because, despite having had constructive notice (via the postal service’s eertified-mail tracking system) *226 that the certified letter had not been delivered to Taylor, the Board had done nothing more to attempt to notify Taylor of the proposed termination of her employment; and (2) that, even assuming that the Board had complied with the notice provisions of the Act, such compliance created only a rebuttable presumption of Taylor’s receipt of the letter, similar to the presumption that arises under the common-law principle referred to as the “mailbox rule,”[3] and Taylor’s evidence had rebutted that presumption.
On August 16, 2012, the Board filed in the Madison Circuit Court a petition for a common-law writ of certiorari or, in the alternative, a notice of appeal of the ALJ’s decision. Following a review of the administrative record and a hearing- on the Board’s motion to quash the ALJ’s August 6, 2012, order, the circuit court determined that the ALJ’s decision was not supported by legal evidence and that the ALJ had incorrectly applied the law to the facts. Specifically, the circuit court held:
“The notice provision of [the Act] plainly states that ‘[njotiee by certified mail ... shall be deemed received by the employee and complete for purposes of this chapter two business days after the notice is deposited for certified delivery in the United States mail.’ Alabama Code [1975,] § 16-24C-6(k) (emphasis added). The statute means exactly what it says. The Board’s duty to provide notice to Taylor was complete under this statute two days after the notice was deposited in the United States mail for certified delivery to Taylor.
“The ALJ’s interpretation of this statute is fundamentally inconsistent with the statute’s plain language.”
The circuit court granted the Board’s motion, issued a writ of certiorari, and quashed the ALJ’s order. Taylor filed a timely notice of appeal to this court.

Standard of Review

“The circuit court’s standard of review of a petition for a common-law writ of certiorari is well settled. On common-law certiorari review, the circuit court’s ‘scope of review was limited to determining if the [ALJ’s] decision to [grant the employee a pretermination hearing] was supported by legal evidence and if the law had been correctly applied to the facts.’ Evans v. City of Huntsville, 580 So.2d 1328, 1325 (Ala. 1991). ‘In addition, the court was responsible for reviewing the record to ensure that the fundamental rights of the parties, including the right to due process, had not been violated.’ Id. ‘Questions of fact or weight or sufficiency of the evidence will not be reviewed on certiorari.’ Personnel Bd. of Jefferson County v. Bailey, 475 So.2d 863, 868 (Ala.Civ.App.1985).
“ ‘ “ ‘[A] common-law writ of certiorari extends only to questions touching the jurisdiction of the subordinate tribunal and the legality of its proceedings. The appropriate office of the writ is to correct errors of law apparent on the face of the record. Conclusions of fact cannot be reviewed, unless specially authorized by statute. The trial is not de novo but on the record; and *227 the only matter to be determined is the quashing or the affirmation of the proceedings brought up for review.’ ” ’
“G.W. v. Dale County Dep’t of Human Res., 939 So.2d 931, 934 n. 4 (Ala.Civ.App.2006) (quoting City of Birmingham v. Southern Bell Tel & Tel. Co., 203 Ala. 251, 252, 82 So. 519, 520 (1919), quoting in turn Postal Tel. Co. v. Minderhout, 195 Ala. 420, 71 So. 91 (1916)). ‘This court’s scope of appellate review is the same as that of the circuit court.’ Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274, 276 (Ala.Civ.App.1994).”
South Alabama Skills Training Consortium v. Ford, 997 So.2d 309, 324 (Ala.Civ.App.2008) (bracketed language altered; footnote omitted).

Discussion

Taylor argues that the ALJ’s decision was correct and that the circuit court erred in concluding otherwise. Specifically, Taylor maintains that the circuit court erroneously construed § 16-24C-6(k), providing that “[njotice by certified mail ... shall be deemed received by the employee and complete for the purposes of this chapter two business days after the notice is deposited for certified delivery in the United States mail” (emphasis added), as having established a conclusive, rather than a rebuttable, presumption that she had received the notice two days after the Board had mailed the notice.
“[A] presumption is a creature of law that assists in the matter of proof by providing that in certain situations proven facts may be strong enough that from them the trier of fact may conclude that the presumed fact exists. Presumptions may be conclusive or rebuttable. Conclusive presumptions ... are those applied when because of certain proven facts the law requires the finder of fact to find another — presumed—fact. On the other hand, rebuttable presumptions, found throughout the legal system, are those under which a certain quantum of evidence gives rise to an inference of some other fact, but as to which fact the opposing party may offer evidence in rebuttal. Rebuttable presumptions are generally created by law — under statutes, case law, or rules of court — for such reasons as the promotion of public policy (as in presumptions favoring the legitimacy of children) [or] because the presumption is based upon human experience (illustrated by the presumption against suicide).... ”
Rule 301, Ala. R. Evid. (Advisory Committee’s Notes).
“ ‘[T]he Tenure Act [the predecessor to the Act] grants to teachers a property interest which, when perfected, is entitled to constitutional due process protection.’ ” Board of Sch. Comm’rs of Mobile Cnty. v. Glenn, 70 So.3d 340, 343 (Ala.Civ.App.2010) (quoting Smith v. Alabama State Tenure Comm’n, 430 So.2d 877, 879 (Ala.Civ.App.1982), affd, 430 So.2d 880 (Ala.1983)). Section § 16-24C-2, Ala.Code 1975, a provision of the Act entitled “legislative intent,” states:
“The purpose of this chapter is to improve the quality of public education in the State of Alabama by [, among other things]:
“(1) Providing for fundamental fairness and due process to employees covered by this chapter.”
Due-process protections require, at a minimum, that “deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.” Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). “[The] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose *228 for himself whether to appear or default, acquiesce or contest.” Id. at 314.
“An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance....
“But when notice is a person’s due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.”
Id. at 314-15 (emphasis added; citations omitted). To construe subsection (k) of § 16-24C-6 as having established a conclusive presumption that Taylor had received the notice of proposed termination of her employment two business days after it had been mailed would, we think, be tantamount to approving a process that is “a mere gesture” and to countenance a course of action that is not what “one desirous of actually informing the absentee might reasonably adopt to accomplish it.” Mullane, supra (emphasis added). Cf. War Eagle Village Apartments v. Plummer, 775 N.W.2d 714 (Iowa 2009).
In Plummer, the Supreme Court of Iowa considered a similar statute that permitted service of an eviction notice by certified mail, with no requirement that a signed return receipt be obtained. At the time Plummer was decided, § 562A.29A, Iowa Code, provided:
“Notwithstanding sections 631.4 and 648.5, the written notice of termination required by section 562A.27, subsection 1, a notice of termination and notice to quit under section 562A.27A, a notice to quit as required by section 648.3, or a petition for forcible entry and detainer pursuant to chapter 648, may be served upon the tenant in any of the following ways:
“1. By personal service.
“2. By sending notice by certified or restricted certified mail, whether or not the tenant signs a receipt for the notice.”
The Iowa court held that the statute “violate[d] the due process clause of the Iowa Constitution on its face” because “the statutory notice scheme [did] not require service which is reasonably calculated to reach the intended recipient.” 775 N.W.2d at 723.
In our judgment, subsection (k) establishes a rebuttable presumption, based on human experience, that an employee has received notice of a proposed termination of his or her employment two business days after the employer deposits the notice with the postal authorities for certified delivery to the employee. Despite the absence of the words “presume” or “presumption” from the text of subsection (k), our construing the statute to create a re-buttable presumption does not disregard the plain meaning of the statute; indeed, our construction is consistent with that portion of the statute indicating that the employee “has the burden of proving that ... service was not properly made.” We acknowledge that the words “deemed” and “presumed” are denotatively and connottively distinct, but we also recognize that, in legal parlance, those words are sometimes considered to be equivalent. See Cooper v. Slaughter, 175 Ala. 211, 215 (synopsis), 222, 57 So. 477, 479 (synopsis), 481 (1912) (reviewing a court’s oral charge to the jury that “ ‘if they believe from the *229 evidence that the boundary line in question was in dispute, and that the adjoining owners caused said line to be established, and that they acquiesced in said line, then the plaintiff would be deemed to be the owner of all lands north of the line so established,’ ” and stating that “ ‘[djeemed,’ as used in this charge, is clearly the equivalent of ‘presumed’”). Alabama caselaw, statutes, and rules of court have frequently used the two words interchangeably. See, e.g., Lemond Constr. Co. v. Wheeler, 669 So.2d 855, 860 (Ala.1995) (stating that “because a child [less than 14 years of age] is deemed incapable of appreciating the danger of a situation in which he may place himself, it follows logically that the child is also presumed incapable of assuming the risk of his action” (emphasis added)); Alabama Mills, Inc. v. Camley, 85 Ala.App. 46, 49, 44 So.2d 622, 624-25 (1949) (quoting former tit. 26, § 213(C), Ala.Code 1940, an amendment to the Unemployment Compensation Act providing that “ ‘[a] woman shall be presumed not to be able to work and not available for work if she quits or is required to terminate her employment because of pregnancy, provided, in any event, that no woman shall be deemed to be able to work and available for work for any week during the three month period immediately before the expected birth of her child, and for any week during the three month period immediately following the birth of her child’” (emphasis altered)); Rule 44(h), Ala. R. Civ. P. (stating that a photocopy of a writing “shall be deemed to be an original record and shall be presumed to be a true and correct reproduction of the original record it purports to represent”).
In the present case, the Board deposited the notice with the postal authorities on Friday, February 10, 2012, and, pursuant to subsection (k), Taylor was presumed to have received the notice two business days later on Tuesday, February 14, 2012. Thus, when Taylor had not requested a hearing to contest the termination of her employment by February 29, 2012 (15 days after February 14, 2012), the Board concluded (and the circuit court agreed that Taylor had “fail[ed] to timely file [a] request for [a] hearing,” see § 16-24C-6(b), and it voted the following day, March 1, 2012, to recommend that Taylor be dismissed from employment.
Like the common-law “mailbox rule,” the subsection (k) presumption, however, is not conclusive, see Sullivan v. Eastern Health Sys., Inc., 953 So.2d 355, 360 (Ala.2006), and the ALJ was presented with evidence from which it, as the finder of fact, could reasonably have determined that Taylor had not “failed” to request a hearing on the proposed termination of her employment, but that she had simply been unaware of the proposed termination and, thus, the need to request a hearing.
Based on evidence indicating that mail delivery in Taylor’s neighborhood had been unreliable and that Taylor had not received the notice, the ALJ was authorized to determine that Taylor had rebutted the subsection (k) presumption. Specifically, Andrew Coe, Taylor’s neighbor, testified that he had been asked before by the mail carrier to sign for certified mail that was not for anyone residing at his address. Coe, a realtor, also stated that, previously, when he had been expecting a certified letter containing an earnest-money deposit for one of his real-estate clients, he had checked the online postal-service tracking system to determine the status of the certified mail. Coe said that the tracking system had indicated that the mail carrier had left a note advising Coe that he had certified mail being held for him at the post office but that no note had, in fact, been left at his address. The ALJ could also reasonably have found, from the nota *230 tion “moved; left no forwarding address” on the certified-mail tracking system when it was undisputed that Taylor had not moved, and from the existence on the green return-receipt card of a partial, scratched-out signature that bore no resemblance to Taylor’s name or handwriting, that the certified letter intended for Taylor had, in fact, been delivered to the wrong address. Because “ ‘[questions of fact or weight or sufficiency of the evidence [are] not ... reviewed on certiorari,’ ” South Alabama Skills Training Consortium v. Ford, 997 So.2d at 324 (quoting Personnel Bd. of Jefferson Cnty. v. Bailey, 475 So.2d 863, 868 (Ala.Civ.App.1985)), the circuit court was not authorized to reject the ALJ’s factual findings. In light of our holding that subsection (k) creates only a rebuttable presumption of receipt after mailing, the circuit court’s conclusion that the ALJ’s decision was not supported by legal evidence and that the ALJ had incorrectly applied the law to the facts was erroneous.

Conclusion

We hold that Taylor was entitled to a pretermination hearing on the second of the two independent grounds upon which the ALJ relied — that, assuming the Board had complied with the notice provisions of the Act, such compliance created only a rebuttable presumption of Taylor’s receipt of the notice, and Taylor’s evidence had rebutted that presumption. Accordingly, we pretermit consideration of the first ground upon which the ALJ relied in granting relief to Taylor.
The circuit court erred in quashing the ALJ’s order requiring the Board to provide Taylor with a pretermination hearing. The judgment is, therefore, reversed, and the cause is remanded with instructions to enter a judgment denying the Board’s cer-tiorari petition.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Section 16-24C-6(b) provides, in pertinent part:
"The termination of a tenured teacher or nonprobationary classified employee ... shall be initiated by the recommendation of the chief executive officer in the form of a written notice of proposed termination to the employee.... [T]he notice shall state the reasons for the proposed termination, shall contain a short and plain statement of the facts showing that the termination is taken for one or more of the reasons listed in subsection (a), and shall be issued in conformity with subsection (k). The notice shall inform the employee ... that, in order to request a hearing with the governing board, the employee must file a written request for such a hearing with the chief executive officer within 15 calendar days after issuance of the notice. Should the employee fail to timely file the request for hearing, the governing board shall vote on the recommended termination."

. Section 16-24C-12 provides:
"An employee who has attained tenure or nonprobationary status and has been denied a hearing before an employer subject to the requirements of this chapter may appeal for relief directly to the Chief Administrative Law Judge of the Office of Administrative Hearings, Division of Administrative Law Judges, Office of the Attorney General. The chief administrative law judge shall appoint an administrative law judge to address the issues raised in the appeal. The appeal shall state facts sufficient to allow the judge to determine tentatively whether or not the employer has complied with this chapter in failing to accord the employee a hearing. The employer may answer or deny in writing the facts set out in the employee appeal and, if the employer fails to do so, the facts set out in the appeal shall be taken as true. The judge shall review the request of the employee and the answer or denial of the employer and shall determine, with or without a hearing, whether or not the employer has complied with this chapter in denying the employee a hearing as provided in this chapter. Based upon his or her findings, the judge shall either order a hearing before the employer or sustain the action taken by the employer. Any petition or application for judicial relief from the decision of the administrative law judge shall be filed in the circuit court of the county in which the principal administrative offices of the employer are located.”

. The mailbox rule stands for the proposition that
" '[a] letter properly addressed, stamped, and mailed is presumed to have been received in due course. Evidence denying the receipt of the letter does not render the evidence of the mailing inadmissible. Neither is it conclusive. Whether it was so mailed and received becomes a jury question.’ ”
Sullivan v. Eastern Health Sys., Inc., 953 So.2d 355, 360 (Ala.2006) (quoting Corinth Bank & Tmst Co. v. Cochran, 219 Ala. 81, 83, 121 So. 66, 67 (1929)).